# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ELLIOT DANIELS, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>   v.<br><br>DELTA AIR LINES, INC.,<br><br>               Defendant. | Civil Action No.<br><br><br>__JURY TRIAL DEMANDED__ |

## __COMPLAINT – CLASS ACTION__

**TABLE OF CONTENTS**

**Page**

I.    NATURE OF ACTION ....................................................................1

II.   JURISDICTION AND VENUE ......................................................3

III.  PARTIES .......................................................................................5

IV.   FACTS ...........................................................................................7

      A.    Background ..........................................................................7

      B.    The Novel Coronavirus Shutdowns and Delta's Resulting Flight
            Cancellations ......................................................................9

      C.    Delta's Refusal of Passenger Refunds on Cancelled Flights .............11

      D.    Consumer Complaints Regarding Delta's Refusal to Provide
            Passengers Refunds For Cancelled Flights Abound ..........15

V.    CLASS ACTION ALLEGATIONS .............................................17

VI.   CAUSES OF ACTION .................................................................22

      COUNT I  VIOLATIONS OF STATE CONSUMER
            PROTECTION ACTS ........................................................22

      COUNT II  UNJUST ENRICHMENT ..........................................27

      COUNT III  CONVERSION .........................................................29

      COUNT IV  FRAUDULENT MISREPRESENTATION ...........30

      COUNT V  BREACH OF CONTRACT ......................................32

PRAYER FOR RELIEF ..........................................................................35

JURY DEMAND ....................................................................................36

Plaintiff, ELLIOT DANIELS, individually and on behalf of all others

similarly situated, for his Class Action Complaint against Defendant DELTA AIR

LINES, INC. ("Delta"), based upon personal knowledge as to his own actions and

based upon the investigation of counsel regarding all other matters, complains as

follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of unprecedented

hardship for so many Americans, with each day bringing different news regarding

the novel coronavirus COVID-19.[1] Social distancing, sheltering-in-place, and

efforts to 'flatten the curve' have separated loved ones from their relatives, workers

from their co-workers, and further isolated those already in or at risk of further

isolation. It has decimated nationwide employment. Nearly 9 in 10 Americans are

now subject to a travel restriction, all to protect the health and welfare of the nation

during this public health emergency.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. In particular, they are aware of the burden this crisis places on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for its response to this Class Action Complaint.

2.      The separation caused by COVID-19 and related protective efforts has particularly impacted travel, including air travel. Opportunity and ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break trip with family or travel for a business meeting, is not.

3.      As a result, airlines have slashed flight schedules, resulting in thousands of flight cancellations for thousands more passengers. But such passengers face additional hardship if they booked their flights with Delta. To add to the difficulties such passengers already face, Delta refuses to issue monetary refunds to passengers with canceled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, Delta represents it will only rebook and/or provide travel vouchers.

4.      The need for monetary refunds over travel vouchers is pressing now. Travel vouchers provide little security in this public crisis, particularly where many individual Americans need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

5.      Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is set to provide

a bailout to the airlines, providing them about $58 billion in aid. But despite the faucet of taxpayer money that will flow its way, Delta refuses to comply with the law or operate in the interests of its customers.

6.      Delta's actions have financially damaged Plaintiff and the Class Members. Plaintiff requested refunds for four tickets on a cancelled flight and was entitled to a refund. But like so many other passengers, Delta denied that request. Delta has engaged in unfair and deceptive conduct through its policy to refuse refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money. As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for Delta cancelled flights, lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any

Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of the State of Maryland, whereas Defendant is a citizen of Delaware and Georgia for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Georgia, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

8.    Venue is appropriate in this District because Defendant maintains its principal place of business within the Atlanta Division of the Northern District of Georgia. In addition, Delta's largest hub (both in terms of passengers carried and the number of departures) is Hartsfield-Jackson Atlanta International Airport, which is within the Atlanta Division of the Northern District of Georgia. And on information and belief, events and transactions causing the claims herein, including Delta's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

9.      Furthermore, by purchasing a ticket and accepting Defendants' offer of air transportation, Plaintiff the Class Members, and Defendants agreed to a choice of law provision. *See* https://www.delta.com/us/en/legal/contract-of-carriage-dgr#24go (last visited April 17, 2020) ("Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Georgia without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted. This Contract of Carriage, including the Ticket and Fare Rules, represents the entire agreement between the parties relating to transportation by Carrier . . . ").

### III.    PARTIES

10.     Plaintiff Elliot Daniels is a citizen and resident of the State of Maryland. Plaintiff is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for his cancelled flight, Delta has refused to provide Plaintiff a refund.

11.     On February 20, 2020, Plaintiff purchased four round-trip tickets for travel to occur starting on April 1, 2020 from Washington Dulles to Cairo, Egypt.

Delta twice cancelled his flights. Plaintiff purchased the tickets through Delta's agent, OneTravel.com, paying Delta $3,090.22 for the four tickets.

12.    On or about March 11, 2020, OneTravel.com informed Plaintiff that Delta had cancelled his flight and requested that he call regarding his travel options. Upon calling OneTravel.com the next morning, the OneTravel.com representative informed Plaintiff that he had two options available to him: (1) rebook his trip with a new departure date of March 31, 2020 or (2) cancel his flight in its entirety and receive a refund. Plaintiff elected to rebook his flight, changing his departure from April 1, 2020 and rebooking the departure for one day earlier, March 31, 2020.

13.    However, Delta then cancelled his rebooked flight. Plaintiff again spoke with a OneTravel.com representative regarding the cancellation, this time requesting a refund since it was an option available to him just days prior. However, Plaintiff's request for a refund was rejected and he was informed that he was limited to a voucher for travel to occur within one year of his original booking date.

14.    On March 18, 2020, Plaintiff also attempted to speak directly with Delta, but could not get through to a customer service representative due to extensive call wait times. As a result, on March 18, 2020, he went on Delta's

website and submitted a refund request directly with Delta, which Delta denied on April 15, 2020, limiting him to travel credits.

15.     At the time of his ticket purchase, Plaintiff understood that he would be entitled to a refund if his flight was cancelled and Plaintiff was actually deceived by Delta regarding his right to a refund and his options following Delta cancelled flights. Plaintiff seeks a refund because he does not know when or if he will be able to use a travel voucher.

16.     Defendant Delta Air Lines, Inc. is a Delaware corporation authorized to do business in Georgia as a foreign corporation with a principal place of business at Post Office Box 20706, Atlanta, Georgia.

## IV.    FACTS

### A.    Background

17.     In a typical service scenario, Delta operates 5,500 flights to over 300 airports in over 50 countries, with domestic hubs at Hartsfield-Jackson Atlanta International Airport, Boston Logan International Airport, Detroit Metropolitan Airport, Los Angeles International Airport, Minneapolis−Saint Paul International Airport, John F. Kennedy International Airport−New York, LaGuardia Airport−New York, Salt Lake City International Airport, and Seattle–Tacoma International Airport.

18.    Delta has over 15,000 additional affiliated departures a day through global alliance partners.[2]  Delta and its alliance partners collectively serve over 140 countries and more than 900 destinations around the world.

19.    In 2019, Delta carried over 200 million customers, utilizing over 1,000 mainline and regional aircraft.[3]  For its services, Delta posted $47 billion in operating revenue in the year ending December 31, 2019. By total revenue, Delta is the world's largest airline.

20.    Delta sells its airline seat inventory and fares through the Delta's direct channels (such as Delta's direct-to-consumer sales website, www.delta.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, Delta collects passenger identification information, including name, address, and telephone information.

---

[2] Delta has alliances with Aeroméxico, Air France-KLM, China Eastern, Korean Air, Virgin Atlantic, and Virgin Australia, and alliances pending regulatory approval with LATAM Airlines and WestJet. Delta is also a founding member of the global SkyTeam Alliance with the following members: Aeroflot, Aerolíneas Argentinas, Aeroméxico, Air Europa, Air France, Alitalia, China Airlines, China Eastern, CSA Czech Airlines, Garuda Indonesia, Kenya Airways, KLM, Korean Air, Middle East Airlines, Saudi Arabian Airlines, Tarom, Vietnam Airlines, and Xiamen Airlines.

[3] Delta has contracts with regional carriers to provide regional service branded as Delta Connection, carrying traffic that connects to the company's hubs and allows flights to smaller cities that cannot be provided economically with mainline aircraft.

21.    But regardless of the method by which Delta sells its tickets, Delta has engaged in unfair, deceptive, and unjust conduct: it is refusing to issue refunds to passengers for coronavirus related flight cancellations.

**B.    The Novel Coronavirus Shutdowns and Delta's Resulting Flight Cancellations**

22.    On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

23.    Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

24.    The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

25.    By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S.

federal government issued its highest-level warning, known as a "do not travel"

warning for areas in Italy and South Korea that are most affected by the virus. The

government also banned all travel to Iran and barred entry to any foreign citizen

who had visited Iran in the previous 14 days.

26.     On March 11, 2020, the World Health Organization declared COVID-

19 a pandemic. That same day, American officials announced yet another travel

ban expansion, this time blocking most visitors from continental Europe to the

United States.

27.     Travel restrictions domestically began on March 16, 2020, with seven

counties in the San Francisco, California area announcing shelter-in-place orders.

Other states, counties, and municipalities have followed the shelter-in-place orders

and as of the drafting of this Class Action Complaint, 316 million people in at least

42 states, 3 counties, 9 cities, the District of Columbia, and Puerto Rico are being

urged to stay home.

28.     As the restrictions expanded and virus fears mounted, Delta cancelled

flights in the United States because of the spreading impact of the coronavirus.

29.     On March 10, 2020, Delta announced it was reducing international

capacity between 20% and 25% and domestic capacity between 10% and 15%,

with continued adjustments as needed. Among the cuts was a 65% slash in trans-Pacific travel.

30.    On March 13, 2020, Delta's CEO announced it would be reducing its flight capacity by 40%, marking the biggest reduction in operation in Delta's history.

31. However, just four days later, on March 18, 2020 Delta announced it would cut 70% of flights and ground more than 600 aircrafts. Delta's executives also announced to worldwide employees that they expected flight cancellations to continue into the summer quarter.

## C.    Delta's Refusal of Passenger Refunds on Cancelled Flights

32.    As Delta announced flight cancellations (combined with decreased domestic bookings), Delta took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. Defendant wanted to retain the money paid to Defendant, given the severe economic losses it is incurring related to pandemic flight cancellations. It does so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

33.    Pursuant to their Contract of Carriage, if Delta cancelled a flight or changed a flight time by over 90 minutes, passengers could receive a full refund.

34.     However, Delta is focused on keeping passenger money through providing travel credits, not refunds. The front page of delta.com has a "Coronavirus Travel Updates" banner and a large red button to encourage consumers to "Change or Cancel" their flight. The "Coronavirus Travel Updates" section of the website notes "[i]t's easy to cancel, make changes or rebook online," and details Delta's policy changes regarding flight credits.

35.     Specifically, the policy change terms note: "[i]n the event your selected flight is canceled by Delta, we will contact you with additional information."

36.     The refund request form is not referenced on Delta's "Coronavirus Travel Updates," and is only located by searching the website specifically for the refund request form. The refund request form notes Delta is "taking up to 21 days to process the accepted refund requests."

37.     Delta's policy changes due to the pandemic primarily focus on encouraging consumers to change or cancel their flight.

38.     On March 4, 2020, Delta announced it will allow travelers with tickets for international flights, but not domestic flights, to change or cancel without paying the usual ticket change fee, plus the difference in travel fare. Those who opt to cancel will receive a travel credit, not their money back.

39.     On March 9, 2020 Delta expanded the fee waiver to all of the airlines'

destinations for passengers with tickets purchased before early March 2020 for

travel through April 30, 2020. However, passengers that chose to cancel will

receive a travel credit, not their money back.

40.     On March 24, 2020, Delta announced it would allow travelers with

tickets for travel through May 31, 2020 to change or cancel without paying the

usual ticket change fee, plus the difference in travel fare. Those who opt to cancel

will receive a travel credit, not their money back.

41.     On April 3, 2020, Delta again updated its policy to allow travelers to

change their flights for up to two years without paying a change fee. Those who

opt to cancel will receive a travel credit, not their money back.

42.     If a passenger is travelling soon, and is unable to get through to a

customer service representative due to high demand, Delta will automatically issue

a travel voucher if a passenger's ticket is unused.[4]

43.     Delta's efforts to refuse and deny customers refunds contradicts

established transportation requirements that operate for the benefit and protection

of airline consumers.

---

[4] https://www.delta.com/us/en/advisories/coronavirus-travel/overview.

44.     As the Department of Transportation advises consumers of their rights: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[5]

45.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[6]

46.     Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[7]

47.     Not only is Delta refusing to refund passengers for Delta cancelled flights, Delta is misleading passengers about their rights by making it difficult to locate information about refunds, refusing refunds, unilaterally providing travel vouchers if a passenger is unable to contact a Delta customer service

---

[5] https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations.

[6] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds

[7] *Id*.

representative, and waiting until the last minute to cancel flights to induce

passengers to cancel their flights.

**D.    Consumer Complaints Regarding Delta's Refusal to Provide Passengers Refunds For Cancelled Flights Abound**

48.    Consistent with Plaintiff's experience, consumer complaints regarding

Delta's unfair, deceptive, and unjust conduct are many. A few examples follow.

49.    For example, one passenger was a teacher that paid $2,400 for nine

student flights for a competition that was cancelled and needs a refund.[8]

50.    Another passenger complained on Twitter they need their $1,200 in

unused flights back.[9]

51.    An increasing number of complaints has led the U.S. Department of

Transportation to disclose on April 3, 2020 that it "is receiving an increasing

number of complaints and inquiries from ticketed passengers, including many with

non-refundable tickets, who describe having been denied refunds for flights that

were cancelled or significantly delayed." The Department reminded carriers,

including Delta, of their "longstanding obligation to provide a prompt refund to a

ticketed passenger when the carrier cancels the passenger's flight or makes a

---

[8] Sharon Genoways (@sgenow) Twitter (March 20, 2020) (replying to Delta Airlines (@Delta).

[9] Quarantined in Utah Dino (@dinopontino), Twitter (April 3, 2020) (replying to Delta Airlines (@Delta).

significant change in the flight schedule and the passenger chooses not to accept

the alternative offered by the carrier."[10]

52.    Sensitive to such consumer complaints, members of the U.S. Senate

have urged Delta in a joint letter to provide full cash refunds to passengers with

cancelled flights during the pandemic:

> We write to urge your airline to issue full cash refunds to
> all customers who cancel their flights during the COVID-
> 19 crisis, and to American citizens who encounter flight
> cancellations while stranded in countries that
> implemented travel restrictions. The ongoing pandemic is
> placing enormous financial strain on millions of
> Americans, and families need cash to pay for essentials
> such as food, housing, and medical care. In light of this
> pressing need and the unprecedented bailout—to the tune
> of $25 billion—that the airline industry just received
> from Congress, we believe your company has a moral
> responsibility to provide real refunds, not travel
> vouchers, to consumers, and to support State Department
> efforts to repatriate any American citizens trying to come
> home.[11]

53.    Delta not only has a moral responsibility to provide real refunds, it has

a legal obligation to do so, particularly in light of the substantial bailout it received

from American taxpayers, including Plaintiff and the Class Members.

---

[10] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf.

[11] Letter to Edward H. Bastian, CEO of Delta Airlines, Inc. from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

## V.    CLASS ACTION ALLEGATIONS

54.    Pursuant to N.D.Ga LR 23.1(A)(2)(a) and (b), Plaintiff sues under

Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on

behalf of himself and a Class defined as follows:

> All persons in the United States that purchased tickets for
> travel on Delta Air Lines flights scheduled to operate to,
> from, or within the United States from March 1, 2020 to
> the present and who sought a refund and were refused or
> who seek a refund in the future.

Excluded from the Class is Defendant, any entity in which Defendant has a

controlling interest, and Defendant's legal representatives, predecessors,

successors, assigns, and employees. Further excluded from the Class is this Court

and its employees. Plaintiff reserves the right to modify or amend the Class

definition, as appropriate, during this litigation.

55.    The definition of the Class is unambiguous. Plaintiff is a member of

the Class he seeks to represent. Class Members can be notified of the class action

through ticketing contact information and/or address lists maintained in the usual

course of business by Defendant.

56.    Under Rule 23(a)(1), Class Members are so numerous and

geographically dispersed that their individual joinder of all Class Members is

impracticable.  Under N.D.Ga. LR 23.1(A)(2)(b) the Plaintiff states the precise

number of Class members is unknown to Plaintiff but may be ascertained from Delta's records.  The total number of members of the proposed Class is greater than 100 and exceeds the number required for jurisdiction under 28 U.S.C. § 1332(d)(2) and (d)(5)(B).  Given the thousands of flight cancellations made by Delta, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

57.    Delta has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

58.    Under N.D.Ga. LR 23.1(A)(2)(d) Plaintiff shows that common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and (b)(3). Some of the common legal and factual questions include:

    a.    Whether Defendant engaged in the conduct alleged;

    b.    Whether Defendant has a policy and/or procedure of denying refunds to Class Members for cancelled flights;

c.    Whether Defendant's policy and/or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

d.    Whether Georgia law applies to the nationwide class;

e.    Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

f.    Whether Defendant violated the common law of unjust enrichment;

g.    Whether Defendant converted Plaintiff's and the Class Members' refunds and/or rights to refunds;

h.    Whether Defendant made fraudulent misrepresentations to Plaintiff and the Class Members;

i.    Whether Defendant breached its contracts with Plaintiff and the Class Members;

j.    Whether the doctrine of promissory estoppel applies to bar Defendant from denying Plaintiff's and the Class Members' refunds; and

      k.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

59.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

60.     The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts under Rule 23(a)(2)—Defendant's misconduct. In each case Defendant has cancelled flights yet denied refunds to Class Members for such cancelled flights.

61.     The Class Members have been damaged by Defendant's misconduct through Delta's practice of cancelling flights, yet denying refunds to Class Members for such cancelled flights.

62.     Plaintiff's claims are typical of the claims of the other Class Members as required by Rule 23(a)(3). Plaintiff paid for airline tickets, did not receive a refund for his cancelled flight, and was actually deceived.

63.     Under N.D.Ga. LR 23.1(A)(2)(c) Plaintiff shows he and his counsel will fairly and adequately protect the interests of the Class as required by Rule

23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

64.    Consistent with N.D.Ga. LR 23.1(A)(2)(e) and Rule 23(b)(3), the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

65.    The Northern District of Georgia is also a desirable forum under Rule 23(b)(3)(C) because Defendant is headquartered in the Northern District of Georgia, made pertinent decisions within this District, and information and relevant documents are expected to exist within this district.

66.    Further, under Rule 23(b)(3)(D), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

67.    Under N.D.Ga. LR 23.1(A)(2)(f) Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6) due to the thousands of flight cancellations made by Delta.

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF
### STATE CONSUMER PROTECTION ACTS

68.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

69.    Count I is brought by Plaintiff, individually and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:[12]

    a.    the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq*.;

    b.    the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq*.;

    c.    the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq*.;

    d.    the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*. and 17500, *et seq*.;

    e.    the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

    f.    the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, *et seq*.;

    g.    the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, *et seq*.;

    h.    the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq*.;

    i.    the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*.;

---

[12] Plaintiff also places Defendant on notice that he intends to amend his complaint to seek recovery for Class Members under the following statutes: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109.

j.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

k.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq*.;

l.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, *et seq*.;

m.      the Illinois Consumer Fraud and Deceptive Business Practices Act, §815 ILCS 505/2 *et seq*.;

n.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, *et seq*.;

o.      the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq*.;

p.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq*.;

q.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq*.;

r.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

s.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, *et seq*.;

t.      the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, *et seq*.;

u.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, *et seq*.;

v.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.;

w.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq*.;

x.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq*.;

y.      the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, *et seq*.;

z.      the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq*.;

aa.    the New Hampshire Regulation of Business Practices For Consumer Protection, N.H. Rev. Stat. § 358-A:1, *et seq*.;

bb.    the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq*.;

cc.    the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.;

dd.    the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq*.;

ee.    the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

ff.     the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, *et seq*.;

gg.    the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq*.;

hh.    the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, *et seq*.;

ii.     the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*.;

jj.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

kk.    the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), *et seq*.;

ll.     the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.;

mm.    the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq*.;

nn.    the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.;

oo.    the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, *et seq*.;

pp.    the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, *et seq*.;

qq.    the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

rr.    the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, *et seq*.;

ss.    the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq*.;

tt.    the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, *et seq*.;

uu.    the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq*.; and

vv.    the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq*.

70.    The unfair and deceptive practices engaged in by Defendant described above, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

71.    Defendant's acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale and refunds of airline tickets. Defendant's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

72.    Plaintiff, on behalf of himself and the Class Members, seeks monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

## COUNT II

## UNJUST ENRICHMENT

73.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

74.    At all times relevant hereto, Defendant sold Plaintiff and the members of the Class airline tickets for travel to, from, and within the United States.

75.     Delta has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though Delta has no right to deny Plaintiff and the Class Members refunds for tickets purchased on Delta cancelled flights.

76.     Plaintiff and members of the Class conferred upon Defendant a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiff and the Class Members conferred benefits that were non-gratuitous.

77.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

78.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

79.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to and seek disgorgement and restitution of

Defendant's wrongful profits, ticket revenue on Delta cancelled flights, and benefits in a manner established by the Court.

## COUNT III

## CONVERSION

80.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

81.    Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled by Delta.

82.    Delta wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on Delta cancelled flights to either a rebooked flight or a travel voucher. All the while Defendant has unlawfully retained the monies Plaintiff and the Class Members paid for tickets on Delta cancelled flights.

83.    Delta deprived Plaintiff and the other members of the Class the value they paid for tickets on Delta cancelled flights as well as their right for a refund.

84.    Plaintiff and members of the Class have requested and/or demanded that Delta issue refunds for Delta cancelled flights.

85.    This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased tickets and, as such, Delta has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

86.    Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on Delta cancelled flights.

## COUNT IV

## FRAUDULENT MISREPRESENTATION

87.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

88.    Defendant intentionally misrepresented to Plaintiff and the Class Members regarding their rights to a refund on Delta cancelled flights, including but not limited to, as reflected in Delta's refund policies.

89.    Defendant intentionally and actively misrepresented to Plaintiff and Class Members that passengers on Delta cancelled flights are limited to rebookings or travel vouchers.

90.     Defendant's representation was false. At all times relevant, Plaintiff and members of the Class are entitled to refunds on Delta cancelled flights, not just rebookings or travel vouchers.

91.     Defendant's misrepresentation was made fraudulently. Defendant made its representations with knowledge that Plaintiff and Class Members were entitled to refunds on Delta cancelled flights and also knowing that Plaintiff and Class Members were not limited to rebookings or travel vouchers for Delta cancelled flights.

92.     Instead, when Delta made the representation regarding the rights to refunds and/or post-Delta flight cancellation options, Delta intended that Plaintiff and the Class Members would rely on it.

93.     Plaintiff and the Class Members relied on Defendant's representations.

94.     The reliance by Plaintiff and the Class Members on Defendant's representations was reasonable.

95.     Defendant's representations proximately caused damage to Plaintiff and the Class Members. By misrepresenting that passengers on Delta cancelled flights are limited to rebookings or travel vouchers, Defendant financially damaged Plaintiff and members of the Class.

## COUNT V

## BREACH OF CONTRACT

96.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

97.     Defendant made offers to Plaintiff and the Class Members to enter into a contract for Defendant to provide Transportation Services to Plaintiff and the Class Members through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

98.     Defendant's offer to provide Transportation Services to Plaintiff and the Class Members also included Defendant's offer that it would refund Plaintiff and the Class Members for all unused portions of passenger tickets for all flights with flight delays greater than 90 minutes as well as for flight cancellations. Such offers were specifically identified in Defendant's materially uniform Contract of Carriage. *See*, *e.g.*, Contract of Carriage Document (rev. June 18, 2019), available at https://www.delta.com/us/en/legal/contract-of-carriage-dgr (last visited April 17, 2020) at Rule 22 (obligating Delta to issue refunds in an amount equal to the fair and charges paid for unused portions of the passenger's ticket for refusals of transport, flight delays, and cancellations).

99.    Defendant made such offers in writing through the Delta's direct channels (such as Delta's direct-to-consumer sales website, www.delta.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies.

100.    The terms of Defendant's offer to provide Transportation Services contained a definite promise by Defendant and gave Plaintiff and the Class Members the power to agree to the terms of Defendant's offer to provide Transportation Services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

101.    Plaintiff and the Class Members accepted Defendant's offer to provide Transportation Services, agreeing to the material terms contained in Defendant's offer to provide Transportation Services.

102.    Plaintiff and the Class Members communicated their acceptance of Defendant's offer to Defendant by purchasing one or more tickets, booking Transportation Services with Defendant.

103.    The agreement between Plaintiff, the Class Members, and Defendant included an exchange of promises or value, *i.e.*, consideration. Here, Plaintiff and the Class Members provided Defendant with consideration in the form of amounts equal to the monetary value of the fare and all charges and taxes paid.

104.    Plaintiff and the Class Members performed all obligations and conditions required and expected of them or had a valid excuse for not performing any such obligations due to the COVID-19 pandemic.

105.    Defendant delayed Plaintiff's and the Class Members' flights by more than 30 minutes and/or cancelled their flights.

106.    Defendant has failed to provide and/or have outright refused to provide refunds to Plaintiff and the Class Members for such delayed or cancelled flights. Defendant did so even though Defendant was contractually obligated to provide refunds to Plaintiff and the Class Members in such circumstances. As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiff and the Class Members.

107.    Because of Defendant's failure to perform the contract, Plaintiff and the Class Members have been damaged and/or did not receive the benefits, payment, and/or performance to which they were entitled.

108.    As a result, Plaintiff and the Class Members are entitled to specific performance and/or fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.    Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel, Hagens Berman Sobol Shapiro LLP, as Class Counsel;

B.    Damages and refunds in the amount of unrefunded monies paid for Delta airline tickets;

C.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D.    Pre-judgment and post-judgment interest on such monetary relief;

E.    Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for Delta cancelled flights;

F.    The costs of bringing this suit, including reasonable attorney's fees; and

G.    All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of the Class

Members.

Dated: April 17, 2020                    Respectfully submitted,

                                         THE STONE LAW GROUP –
                                         TRIAL LAWYERS, LLC
                                         By: /s/ *William S. Stone*
                                         William S. Stone (GA. Bar No. 684636)
                                         James W. Stone (GA. Bar No. 328708)
                                         5229 Roswell Road, NE
                                         Atlanta, GA 30342
                                         T: (404) 239-0305
                                         F: (404) 445-8003
                                         billstone@stonelaw.com
                                         james@stonelaw.com

                                         Steve W. Berman
                                         (*Pro Hac Vice* Forthcoming)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         T: (206) 623-7292
                                         F: (206) 623-0594
                                         steve@hbsslaw.com

                                         Daniel J. Kurowski
                                         (*Pro Hac Vice* Forthcoming)
                                         Whitney K. Siehl
                                         (*Pro Hac Vice* Forthcoming)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         455 N. Cityfront Plaza Dr., Suite 2410
                                         Chicago, IL 60611
                                         T: (708) 628-4949
                                         F: (708) 628-4950
                                         dank@hbsslaw.com
                                         whitneys@hbsslaw.com

                                         *Attorneys for Plaintiff, individually and on
                                         behalf of all others similarly situated.*