## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ANGELA DUSKO, *on behalf of*             *
*herself and all others similarly*       *
*situated*,                              *
                                         *
          Plaintiff,                     *
                                         *
     v.                                  *          1:20-CV-01664-ELR
                                         *
DELTA AIR LINES, INC.,                   *
                                         *
          Defendant.                     *
                                         *

_____

# O R D E R

_____

Presently before the Court are Defendant Delta Air Lines, Inc.'s "Motion to Dismiss Plaintiff's Consolidated Amended Complaint" [Doc. 57] and "Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint." [Doc 62]. The Court's reasoning and conclusions are set forth below.

## I.    Background[1]

In this putative class action, named Plaintiff Angela Dusko (hereinafter, "Plaintiff") brings claims against Defendant, challenging the airline's refund policies

---

[1] As required when analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations within the Second Consolidated Amended Complaint as true and draws all reasonable inferences in favor of the non-moving party. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

and practices during the COVID-19 pandemic.[2]  See Second Consolidated Amended Compl. ("SCAC") ¶¶ 1–8 [Doc. 59].  Defendant is "one of the world's largest airlines," serving destinations in over fifty (50) countries worldwide.  See id. ¶¶ 1–2.  Plaintiff is a Montana citizen who purchased four (4) tickets for a March 27, 2020 flight from Helena, Montana to Cancun, Mexico for herself and her family members.  See id. ¶¶ 15, 64.  By purchasing these air travel tickets from Defendant, Plaintiff agreed to be bound by the terms of Defendant's Contract of Carriage (hereinafter, the "COC").[3]  See id. ¶ 4 n.1.

On March 25, 2020, Defendant notified Plaintiff via email that her March 27, 2020 flight had been cancelled.  See id. ¶ 65.  Defendant's email also stated that Defendant was attempting to rebook Plaintiff and her family for the next available flight and that Plaintiff could take "more immediate action" by selecting her own replacement flight.  See id. ¶ 66.  Defendant's email did not provide Plaintiff with information about how to receive a refund for the purchase of her flight tickets.  See id.  Later, on March 26, 2020, Defendant sent Plaintiff another email stating that her flight had been rebooked for departure on March 28, 2020.  See id. ¶ 67.

---

[2] As discussed below, named Plaintiff Angela Dusko is currently the only plaintiff in this suit.

[3] The Court notes that Defendant offers both a domestic and international COC, each with slightly different provisions.  See SCAC ¶ 3 n.1.  The Parties agree that "[t]he relevant terms of both contracts are materially the same."  See id.; [see also Doc. 62-1 at 4 n.1].  Thus, the Court refers only to the domestic version of the COC throughout this order.

After reviewing the cancellation email and rebooking options on that same day, Plaintiff called Defendant's customer service hotline "to exercise her right to reject the re-accommodation[s]" offered by Defendant, "cancel her remaining unused fare, and receive a refund." See id. ¶ 68.  During the conversation with Defendant's customer service agent, Plaintiff stated that she did not want her travel rebooked and requested a "full refund for all four (4) round-trip tickets, given the airline's cancellation" of the March 27, 2020 flight.  See id.  In response, Defendant's customer service agent explained that if Plaintiff did not accept the re-accommodations for her cancelled flights, Plaintiff could only receive flight vouchers (travel credit), not a refund.  See id. ¶ 69.  Thereafter, on April 17, 2020—twenty-two (22) days after Plaintiff's phone call to Defendant's customer service line—Plaintiff filed her putative Class Action Complaint.  See Dusko v. Delta Air Lines, Inc., Case No. 1:20-CV-01725-ELR (N.D. Ga. 2020).  On May 12, 2020, forty-seven (47) days after Plaintiff's phone call with Defendant's customer service representative, Defendant issued a full refund to Plaintiff for the price of her four (4) flight tickets.  See SCAC ¶¶ 71–72.

## II.    Procedural History

On April 17, 2020, former named Plaintiff Elliot Daniels filed his putative Class Action Complaint against Defendant for its "unfair and deceptive conduct[,]" namely "refus[ing] [to provide] refunds, [as well as] limiting and forcing customers

into a rebooked flight or travel voucher instead of returning their money." See Compl. ¶ 6 [Doc. 1]. Later, in an Order dated July 9, 2020, the Court consolidated Dusko v. Delta Air Lines, Inc., Case No. 1:20-CV-01725 (N.D. Ga. 2020) and Polk v. Delta Air Lines, Inc., Case No. 1:20-CV-02461-ELR (N.D. Ga. 2020) with the instant action. [See Doc. 20 at 1]. In that same Order, the Court directed Plaintiffs to file a Consolidated Amended Complaint (hereinafter, "CAC") within thirty (30) days of the Court's ruling on any "class leadership proposals." [See id. at 1–2]. Additionally, on July 9, 2020, Plaintiff Dusko and former named Plaintiff Kevin Polk each filed their "Class Action Complaint." [Docs. 21, 22].

On July 23, 2020, each Plaintiff filed their respective "Motion to Appoint Lead Counsel." [Docs. 28, 29, 30]. In an Order dated November 3, 2020, the Court appointed as lead counsel attorneys Roy E. Barnes of Barnes Law Group, LLC; Melissa S. Weiner of Pearson, Simon & Warshaw, LLP; Jeffrey Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert; and Annick M. Persinger of Tyco & Zavareei LLP. [See Doc. 39 at 3–5]. Shortly thereafter, former named Plaintiff Kevin Polk filed a "Voluntary Notice of Dismissal" and was removed from this action. [See Doc. 42]. On December 17, 2020, Plaintiff Dukso filed a CAC,

removing as a Party former named Plaintiff Elliot Daniels.[4]  See CAC [Doc. 44].  At present, Angela Dusko is the only named Plaintiff.  [See id. at 1].

In an Order dated February 26, 2021, the Court approved the Parties' proposed schedule, extending the time for Defendant to answer or otherwise respond to Plaintiff's CAC until June 23, 2021.  [See Doc. 56 at 1].  Additionally, the Court provided that should Plaintiff choose to amend her CAC, she must do so within thirty (30) days of Defendant's response.  [See id. at 2].  The Court also Ordered that if Plaintiff chose to amend her CAC, the deadline for Defendant's response to Plaintiff's amended CAC would be thirty (30) days thereafter. [See id.]

On June 23, 2021, Defendant filed its pending "Motion to Dismiss Plaintiff's [CAC]."  [Doc. 57].  Thereafter, on July 23, 2021, Plaintiff filed her "Second Amended Consolidated Class Action Complaint."  See generally SCAC [Doc. 59]. In her SCAC, Plaintiff alleges two (2) counts on behalf of herself and the putative class: Count I—Breach of Contract and Count II—Breach of Contract (Covenant of Good Faith and Fair Dealing).  See id. ¶¶ 83–99.  Subsequently, on August 23, 2021,

---

[4] The Court notes, however, that former named Plaintiff Elliot Daniels did not file on the docket a Notice of Voluntary dismissal.

Defendant filed its motion to dismiss Plaintiff's SCAC, which Plaintiff opposes.[5]

[Docs. 62, 64, 65].  These matters are now ripe for the Court's review.

## III.    Defendant's "Motion to Dismiss Plaintiff's [SCAC]" [Doc. 62]

The Court turns to Defendant's instant motion to dismiss Plaintiff's SCAC.[6]

[Doc. 62].  The Court sets forth the relevant legal standard before considering the

merits of the Parties' arguments.

### A.    Legal Standard

When considering a 12(b)(6) motion to dismiss, a court must accept as true

the allegations set forth in the complaint, drawing all reasonable inferences in the

light most favorable to the plaintiff.  See Twombly, 550 U.S. at 555–56; see also

U.S. v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013) (per curiam).  Even so, a

---

[5] Additionally, on February 10, 2022, Plaintiff filed a "Notice of Supplemental Authority," in which Plaintiff submit for the Court's consideration Cavalieri v. Avior Airlines C.A., No. 19-11330, 2022 WL 325242 (11th Cir. Feb. 3, 2022).  [See Doc. 67 at 1–2].  Thereafter, on February 16, 2022, Defendant filed its "Response to Plaintiff's Notice of Supplemental Authority." [Doc. 68].

[6] As stated above, on June 23, 2021, Defendant filed its pending "Motion to Dismiss Plaintiff's [CAC]" seeking dismissal of Plaintiff's claims for failure to state a claim.  [Doc. 57-1 at 7–8].  In accordance with the Court's Order dated February 26, 2021, Plaintiff amended her CAC by filing her SCAC on July 23, 2021.  [See Docs. 56 at 2; 59].  It is well-settled that an "amended pleading supersedes the former pleading[,]" and "the original pleading is abandoned by the amendment[.]" See Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER, 463 F.3d 1210, 1215 (11th Cir. 2006).  As such, the CAC "is no longer a part of the pleader's averments against [their] adversary."  See id.; [see also Docs. 57, 59].  Because Plaintiff's SCAC supersedes the CAC, the Court denies as moot Defendant's "Motion to Dismiss Plaintiff's [CAC]."  [See Doc. 57]; see also Dresdner Bank, 463 F.3d at 1215.

complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); see also Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007).

Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570).  Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See id.  This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim.  See id.

B.    **Discussion**

By its instant motion, Defendant moves to dismiss both of Plaintiff's Counts. [See Docs. 62-1, 65]; see also SCAC ¶¶ 83–99.  As to Plaintiff's Count I—Breach of Contract, Defendant argues that Plaintiff has failed to state a claim for breach based on the terms of the COC.  [See Doc. 62-1 at 16–23].  Additionally, Defendant seeks to dismiss Plaintiff's Count II for breach of an implied covenant of good faith and fair dealing because Defendant argues that it expressly disclaimed all implied

covenants within the COC.  [See id. at 23–26].  The Court begins with the Parties'
arguments regarding Plaintiff's Count I.

### 1.    Count I—Breach of Contract

By Count I of her SCAC, Plaintiff asserts a state law claim for breach of
contract based on Defendant's handling of her flight refund after cancellation of her
March 27, 2020 flight.  See SCAC ¶¶ 83–91.  In Georgia, "[t]he essential elements
of a breach of contract claim are (1) a valid contract; (2) material breach of its terms;
and (3) damages arising therefrom."[7]  See Brooks v. Branch Banking & Tr. Co., 107
F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (internal citation omitted).  Here, it appears
that the Parties dispute only the second element: whether Plaintiff sufficiently
alleges a breach of the COC.  [See Docs. 62-1, 64, 65]; see also Brooks, 107 F. Supp.
3d at 1295.  Pursuant to Georgia law, "[a] breach occurs if a contracting party
repudiates or renounces liability under the contract; fails to perform the engagement
as specified in the contract; or does some act that renders performance impossible."
See UWork.com, Inc. v. Paragon Techs., Inc., 740 S.E.2d 887, 893 (Ga. Ct. App.
2013).

In her Count I, Plaintiff alleges that Defendant breached the terms of the COC
for several reasons, including: issuing her refund in an untimely manner;

---

[7] The Parties do not dispute that Georgia law governs this dispute.  [See Docs. 62-1, 64, 65].
Additionally, the COC states that Georgia law shall govern "any and all matters arising out of or
relating to this [COC][.]"  [See Doc. 59-2 at 26].

systematically frustrating passengers' ability to request a refund; failing to immediately issue Plaintiff a refund after her flight was cancelled; and initially denying her refund and offering her travel credits in lieu of a refund. <u>See</u> SCAC ¶¶ 83–91. Specifically, Plaintiff contends that Defendant breached two (2) rules of the COC: rules 19 and 22. <u>See id.</u> ¶¶ 4, 5. By its instant motion, Defendant argues that Plaintiff has failed to state a claim for breach of contract. [<u>See</u> Doc. 62-1 at 16–23].

First, the Court considers Defendant's arguments for dismissal of the portion of Plaintiff's breach of contract claim that posits that Defendant breached Rule 22 of the COC by failing to provide passengers "timely refunds." [<u>See</u> Docs. 62-1 at 19; 65 at 12]; <u>see also</u> SCAC ¶ 8. Rule 22(C), titled "Time Limit for Refund Requests," states that "no refund will be issued on any ticket unless [Defendant] receives a refund request and any unused coupons are surrendered to [Defendant] within one year of the original issue date of the ticket." [<u>See</u> Doc. 59-2 at 25]. Additionally, Rule 22(D), titled "Form of Refund," estimates a time frame for when Defendant will issue refunds on eligible tickets based on a passenger's method of payment. [<u>See</u> <u>id.</u>] As written in the COC,

> [t]ickets paid for by credit card will be refunded to the credit card account . . . typically within seven business days of [Defendant]'s receipt of [a passenger's] initial refund request. Tickets paid for by cash, if cash is accepted by [Defendant], will be refunded by check issued to the person named as a passenger on the ticket . . . typically within 20 business days of [Defendant]'s receipt of [a passenger's] initial refund request.

[See id.]  The Parties dispute whether Rule 22 of the COC obligates Defendant to provide refunds to passengers within a specific time frame.  [See Docs. 62-1 at 19; 64 at 25–26; 65 at 12–13].

For its part, Defendant argues that "[n]othing in Rule 22(D) obligates [Defendant] to provide a refund within any specific time frame."  [See Doc. 62-1 at 19].  In opposition, Plaintiff maintains that Rule 22(D) "expressly provides a timeframe in which passengers can *reasonably expect* a refund[.]"  [See Doc. 64 at 25] (emphasis added).  Additionally, Plaintiff contends that Defendant's interpretation of the COC would render meaningless the "Time Limit for Refund Requests" provision (Rule 22(C)).  [See id. at 25–26].  In reply, Defendant notes that Rule 22(C), concerns the passengers' responsibilities for a refund and "has nothing to do with how long [Defendant] may take to provide a refund."  [See Doc. 65 at 12].

Pursuant to Georgia law, "[w]hen a court construes contractual terms to determine if a breach has occurred, 'the cardinal rule of contract construction is to ascertain the intention of the parties.'"  See UWork.com, Inc., 740 S.E.2d at 893 (internal citation omitted).  A court ascertains the parties' intent from the contractual terms alone "if the contractual terms are plain and unambiguous[.]"  See id.  To determine whether contractual terms are ambiguous, Georgia law directs courts to follow three (3) steps:

> [F]irst, the court determines whether the contract language is clear and
> unambiguous. If the language is clear, the court applies its plain

meaning; if it is unclear, the court proceeds to step two. At step two, the court attempts to resolve the ambiguity using Georgia's canons of contract construction.  If the ambiguity cannot be resolved using the canons, then the court proceeds to step three, where the parties' intent becomes a question of fact for the jury.

See Tims v. LGE Cmty. Credit Union, 935 F.3d 1228, 1237 (11th Cir. 2019) (citing City of Baldwin v. Woodward & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013)). "No ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is 'capable of only one reasonable interpretation.'"  Capital Color Printing, Inc. v. Ahern, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008) (internal citation omitted).

In this instance, the Court agrees with Defendant.  As an initial matter, the Court finds that the Rule 22 is "clear and unambiguous." See Tims, 935 F.3d at 1237. Within the COC, Rule 22(D)'s use of the word "typically" signals only a forecasted (but not guaranteed) timeframe for a passenger's refund.  [See Doc. 59-2 at 25–26]. Interpreting this plain language, the Court finds that the COC does not create an obligation for Defendant to provide passengers a refund within the approximate time periods specified in Rule 22.  [See id.]; see also UWork.com, Inc., 740 S.E.2d at 893 (internal citation omitted).  Instead, the Court observes that the COC only *estimates* a time for Defendant's performance.  See Hanham v. Access Mgmt. Group L.P., 825 S.E.2d 217, 220 (Ga. 2019) ("a breach of contract claim can[not] be founded upon responsibilities not specified in the contract.").  Accordingly, the Court finds that the

COC does not define a time period during which a refund must be issued (after the other prerequisite conditions are met).  [See Doc. 59-2]; see also Hanham, 825 S.E.2d at 220.

Next, the Court turns to Plaintiff's allegations that Defendant breached the COC by "systematically frustrat[ing]" passengers' ability to request refunds when Defendant cancelled their flights.  [See Docs. 62-1 at 22; 65 at 15–16]; see also SCAC ¶ 6.  Defendant contends that these allegations are not sufficient for Plaintiff to state a claim for breach of contract because Plaintiff cannot identify any term in the contract related to systematic frustration of the refund process.  [See Doc. 62-1 at 18–19].

As stated above, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." See Brooks, 107 F. Supp. 3d at 1295.  It is well settled that "[a] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendant[] violated to survive a motion to dismiss."  See Bryant v. Progressive Mountain Ins. Co., 243 F. Supp. 3d 1333, 1340 (M.D. Ga. 2017) (internal citation omitted).  Upon review, it is clear from Plaintiff's own allegations that she fails to specify what provisions of the COC that Defendant has breached when it supposedly "systematically frustrated" the refund process.  See SCAC ¶ 90; see also Bryant, 243

F. Supp. 3d at 1340.[8]  As context, Rule 19 of the COC, titled "Flight Delays/Cancellations," articulates a passenger's options and Defendant's obligations in the event of a delayed or cancelled flight.  [See Doc. 59-2 at 18]. Subsection A of Rule 19 (titled "[Defendant]'s Liability in the Event of Schedule Changes, Delays and Flight Cancellations") states, in relevant part:

> If there is a flight cancellation, diversion, delay of greater than 90 minutes, or that will cause a passenger to miss connections, [Defendant] will (at passenger's request) cancel the remaining ticket and refund the unused portion of the ticket and unused ancillary fees in the original form of payment in accordance with Rule 22.  If the passenger does not request cancellation and refund of the remaining portion of the ticket, [Defendant] will transport the passenger to the destination on [Defendant]'s next flight on which seats are available . . . .

[See id.]  In turn, the COC's Rule 22(A) provides the following regarding refunds:

> If a refund is required because of [Defendant]'s failure to operate on schedule or refusal to transport (except as a result of Passenger's failure to comply with the [COC]), the following refund will be made directly to you. . . . If no portion of the ticket has been used, the refund will be an amount equal to the fare paid.

[See id. at 24].

As stated above, the Court ascertains the parties' intent from the contractual terms alone "if the contractual terms are plain and unambiguous[.]"  See UWork.com, Inc., 740 S.E.2d at 893 (internal citation omitted).  Additionally, "no

---

[8] Additionally, to the extent Plaintiff bases this contention on a breach of an implied covenant of good faith and fair dealing imposed by the COC, the Court addresses such arguments below with regards to Plaintiff's Count II.

ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is 'capable of only one reasonable interpretation.'"  See Capital Color Printing, Inc., 661 S.E.2d at 583 (internal citation omitted).

By its instant motion, Defendant contends that the terms of the COC provide no support for Plaintiff's allegations of breach based on Defendant's failure to immediately provide a refund when a flight is canceled.  [See Doc. 62-1 at 16–17]. Specifically, Defendant argues that the unambiguous terms of the COC provide that Defendant need not refund a ticket until two (2) conditions are met: (1) the passenger rejects Defendant's offer for a flight re-accommodation and (2) the passenger requests a refund.  [See id. at 17, 22] (noting that Rule 22(C) explicitly states that "[n]o refund will be issued on any ticket unless [Defendant] receives a request for the refund").  Thus, Defendant asserts that Plaintiff's allegations of breach based on a right to an immediate and automatic refund following a flight's cancellation are not supported by the clear terms of the COC.  [See id. at 16–17, 22].

Upon review, the Court agrees with Defendant and finds that the terms of the COC are unambiguous.  Clearly, the COC provides that Defendant is under no obligation to refund a ticket until a passenger both (1) denies Defendant's offer of re-accommodation and (2) requests a refund.  [See Doc. 59-2 at 18, 24]; see also Kwok v. Delta Air Lines, Inc., 578 F. App'x 898, 900 (11th Cir. 2014) (per curiam)

14

(internal citation omitted) ("where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, a court is required to enforce the contract according to its clear terms.").

However, Plaintiff alleges Defendant breached the COC when it initially denied her request for a refund and instead offered her travel credits. See SCAC ¶¶ 5, 88. Defendant proffers that Plaintiff does not allege a breach on this basis because Plaintiff ultimately received a refund and not travel credits. [See Doc. 65 at 10–11]. However, Plaintiff asserts that the refusal of her refund and offer of travel credits was a breach because no Rule in the COC permits Defendant to offer travel credit instead of a re-accommodation or a refund. [See Doc. 64 at 17].

Upon review, the Court finds that Plaintiff sufficiently alleges a breach of contract claim on this basis. [See Doc. 59-2 at 18, 24–26]. Pursuant to the COC, Defendant was obligated to provide a refund if a passenger refused to accept re-accommodation and made a refund request. [See id.] Here, the Court finds Plaintiff plausibly alleges that she rejected the re-accommodation and timely requested a refund from Defendant. See SCAC ¶¶ 68–69. Further, Plaintiff alleges that Defendant's customer service representative explained that if Plaintiff chose not to take the rebooked flight (the re-accommodation) on March 28, 2020, Plaintiff and

her family would only be entitled to flight vouchers (travel credits)—not a refund.[9]

See id. ¶ 69.  Thus, when the Defendant's customer service representative denied Plaintiff's request for a refund after Plaintiff refused the re-accommodation, this action breached the COC.  [See Doc. 59-2 at 18, 24–26]; see also SCAC ¶¶ 68–69. In light of these facts, Plaintiff has plausibly alleged a breach of the terms of the COC.  See UWork.com, Inc., 740 S.E.2d at 893.

Although Defendant ultimately refunded Plaintiff six (6) weeks after it previously denied her refund request, the Court finds that this does not alter the undersigned's finding.  See Shelnutt v. Mayor of Savannah, 826 S.E.2d 379, 384 (Ga. Ct. App. 2019) ("In contract actions the time of the breach controls, not the time the actual damages result or are ascertained.").  Critically, Defendant does not proffer any authority for its proposition that its subsequent refund to Plaintiff—after rejecting her request for the same—somehow nullifies her breach of contract claim. [See Docs. 62-1, 65]; see also Gulf Offshore Logistics, LLC v. Bender, 2010 WL

---

[9] Defendant argues that "an allegation that someone at [Defendant's customer service department] misstat[ing] Plaintiff's rights under the contract is not the same thing as alleging a breach of contract."  [See Docs. 62-1 at 23; 65 at 10–11] (citing Wright v. Safari Club Int'l, Inc., 745 S.E.2d 730, 736 (Ga. App. 2013)).  However, Defendant does not proffer—nor does the Court locate— any authority permitting the denial by Defendant's customer service representative to be considered a non-triggering event for breach of the COC.  [See Docs. 62-1, 65].  Specifically, Defendant's reliance on Wright v. Safari Club Int'l, Inc. does not support its position.  See 745 S.E.2d at 736.  In Wright, the appellant sought, among other things, to invalidate a non-refund provision that he did not read because it was not "prominent and clear" as required by the Georgia Fair Business Practices Act (hereinafter, the "GFBPA").  See id. at 734–36 (internal citations omitted).  Here, in contrast to Wright, Plaintiff seeks to enforce (rather than invalidate) the agreement at issue, and the claims at issue do not concern the GFBPA.  See generally SCAC; see also Wright, 745 S.E.2d at 734–36.

500448, *2 (S.D. Ala. Feb. 9, 2010) ("Because the defendant presented a Rule 12(b)(6) motion . . . he at all times bore the burden of demonstrating entitlement to dismissal."). Absent this showing, the Court finds that Defendant has failed to carry its burden. See Coventry First, LLC v. McCarty, 605 F.3d 865, 869 (11th Cir. 2010) (recognizing that movant bears the burden on Rule 12(b)(6) motion).

Instead, taking Plaintiff's allegations within the SCAC as true, as the Court must at this stage, the Court finds that Defendant plausibly breached the COC when its customer service representative denied Plaintiff a refund after she rejected the flight re-accommodation and requested the refund. See SCAC ¶ 69; see also UWork.com, Inc.,740 S.E.2d at 893; Shelnutt, 826 S.E.2d at 384; Kueffer Crane & Hoist Serv., Inc. v. Passarella, 543 S.E.2d 113, 116 (Ga. Ct. App. 2000) ("[A] cause of action accrues when the plaintiff could have first maintained the action to a successful result."). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Count I on this basis. See Coventry First, LLC, 605 F.3d at 869.

In sum, the Court finds that Plaintiff has sufficiently alleged a claim for breach of contract based on her allegations that Defendant denied Plaintiff a refund after she rejected the re-accommodation and requested a refund. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Count I.

2.    <u>Count II—Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)</u>

The Court now turns to Plaintiff's Count II—Breach of Contract (Implied Covenant of Good Faith and Fair Dealing) and Defendant's arguments for dismissal. [<u>See</u> Doc. 62-1 at 23–26]. By Count II, Plaintiff claims that Defendant, through its business practices related to refund procedures, breached the covenant of good faith and fair dealing implied in every contract pursuant to Georgia law. <u>See</u> SCAC ¶¶ 92–98. Specifically, Plaintiff alleges that Defendant took an "opportunistic advantage of a gap in ambiguous contractual language by retaining the air fare paid by Plaintiff and [putative] Class members for flights that [Defendant] canceled." <u>See id.</u> ¶ 97. Defendant argues that Plaintiff's Count II is due for dismissal because Defendant properly contracted out of the implied covenant and the Airline Deregulation Act (hereinafter, the "ADA") bars Plaintiff's Count II. [<u>See</u> Doc. 65 at 18–19].

Pursuant to Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." <u>See</u> <u>Brazeal v. NewPoint Media Grp., LLC</u>, 798 S.E.2d 300, 302 (Ga. Ct. App. 2017) (internal citation omitted). "[T]his implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance." <u>See id.</u> (internal citation omitted). Moreover, the covenant of good faith and fair dealing may—in certain cases—"serve as a gap filler to a contract."

18

See Raiford v. Nat'l Hills Exch., LLC, No. CV 111-152, 2013 WL 1286204, at \*19 (S.D. Ga. Mar. 27, 2013), on reconsideration in part sub nom. Raiford v. Nat'l Hills Exch., LLC, No. 1:11-CV-152, 2016 WL 2908412 (S.D. Ga. May 17, 2016) (internal citation omitted). "Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." See id. (internal citation and quotation omitted). Accordingly, "when the contract is silent, principles of good faith fill the gap" if they "do not block use of terms that actually appear in the contract." See id. (internal citation omitted and alterations adopted). "The exception to this general rule [of good faith and fair dealing] occurs only if the contract expressly (not impliedly) provides otherwise." Hunting Aircraft, Inc. v. Peachtree City Airport Auth., 636 S.E.2d 139, 142 (Ga. Ct. App. 2006). "As a general matter, disclaimers [within a contract] are enforceable under Georgia law unless they violate public policy." Wright, 745 S.E.2d at 735.

Upon review, Court finds that Plaintiff fails to allege a plausible claim in Count II—Breach of Contract (Implied Covenant of Good Faith and Fair Dealing). Here, the COC expressly provides that the implied covenant of good faith and fair dealing does not apply. [See Doc. 59-2 at 26]. Specifically, the COC provided that "[n]o other covenants, warranties, undertakings or understandings may be implied, in law or in equity[]" to the COC. [See id.]; cf. Nw., Inc. v. Ginsberg, 572 U.S. 273,

288 (2014) ("if an airline's agreement is governed by the law of such a State [that implies a covenant of good faith and fair dealing into contracts], the airline can specify that the agreement does not incorporate the covenant"). Additionally, to the extent Plaintiff's Count II purports that the covenant should act as a "gap filler" for the COC, the ADA preempts such a claim because an airline's contract terms may not be altered, enhanced, or enlarged "based on state laws[.]"[10] See Lu, 631 F. App'x at 662 (internal citations omitted). As such, the Court finds that Plaintiff's Count II—Breach of Contract (Implied Covenant of Good Faith and Fair Dealing) is ripe for dismissal and grants Defendant's motion to dismiss as to this claim. [See Doc. 59-2 at 26]; see also Lu, 631 F. App'x at 662 (internal citations omitted).

## IV.   Conclusion

For the reasons set forth above, the Court **DENIES AS MOOT** Defendant's "Motion to Dismiss Plaintiff's [CAC]." [Doc. 57]. Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's "Motion to Dismiss Plaintiff's [SCAC]." [Doc. 62]. Specifically, the Court **DENIES** Defendant's

---

[10] Indeed, "the person with whom an air carrier has contracted may bring a[n] [express or implied] breach-of-contract action so long as the action concerns voluntary commitments and not state-imposed obligations." See Airlines, Inc. v. Wolens, 513 U.S. 219, 232 (1995) (internal citations omitted and alterations adopted); see also Bailey v. Rocky Mt. Holdings, LLC, 889 F.3d 1259, 1268 (11th Cir. 2018) (citing Wolens, 513 U.S. at 232). However, courts must analyze breach of contract claims to ensure that they are "confined to the terms of the parties' voluntary undertakings, 'with no enlargement or enhancement based on state laws or policies external to the agreement.'" See Xiaoyun Lucy Lu v. AirTran Airways, Inc., 631 F. App'x 657, 662 (11th Cir. 2015) (internal citation omitted).

motion to dismiss as it pertains to Plaintiff's Count I—Breach of Contract. However, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Count II—Breach of Contract (Covenant of Good Faith and Fair Dealing).  Finally, the Court **DIRECTS** Defendant to file its Answer to the remaining portions of the SCAC within fourteen (14) days of the date of entry of this order.

      **SO ORDERED**, this 2nd day of March, 2022.

                  Eleanor L. Ross
                  United States District Judge
                  Northern District of Georgia